**UNITED STATES JUDICIAL DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. _____ - Civ

F.E.B. CORP., a Florida
Corporation,
                          Plaintiff,
vs.

UNITED STATES OF AMERICA,

                          Defendant.

---

## COMPLAINT

---

F.E.B. Corp., a Florida Corporation ("FEB"), with its principal place of business located in Monroe County, Florida, as its Complaint against the United States of America ("United States") alleges as follows:

### JURISDICTION AND VENUE

1.      This action relates to quieting title to property which FEB, and its predecessors-in-interest, have held record title to since March 3, 1845 against an adverse claim of interest made by the United States' Bureau of Land Management ("BLM"). This Court has subject matter jurisdiction under the Quiet Title Act, 28 U.S.C. § 2409a and 28 U.S.C. § 1346(f).

2.      The property in dispute constitutes approximately thirty-nine acres of submerged lands, at previous relevant times, owned by the State of Florida (the "State" or "Florida"), including a spoil island encompassed by the thirty-nine acres of submerged lands known as

Wisteria Island or Christmas Island ("Wisteria Island"), all of which are located northwest of the Island of Key West in Monroe County, Florida.  [Ex. A].  Venue is therefore proper in this Court under 28 U.S.C. § 1391(e).

## I.  SUMMARY OF FEB's OWNERSHIP OF WISTERIA ISLAND AND THE UNEQUIVOCAL GOVERNMENTAL ACKNOWLEDGMENTS THEREOF

*THE STATE OF FLORIDA'S OWNERSHIP OF SUBMERGED LANDS, INCLUDING THOSE AT ISSUE IN THIS CASE*

3.     On March 3, 1845, by an Act of the 28th Congress of the United States, Florida was admitted as a State to the United States of America.  By this Act, the United States placed within the boundaries of Florida all lands then known as East and West Florida which had been acquired by the United States from Spain pursuant to the Adams-Onis Treaty of 1819 (hereafter, the "Grant").  [Ex. B] (all highlighting on exhibits has been added).

4.     The Grant did not contain any express reservations to the United States of submerged lands beneath navigable waters.  Further, pursuant to the Equal Footing Doctrine,[1] Florida received all right, title and interest to the submerged lands within Florida's boundaries in 1845.  The Grant, therefore, included the submerged lands at issue in this case, including Wisteria Island.

5.     In 1855, pursuant to what is now FLA. STAT. § 253.03, the Florida legislature created the Board of Trustees of the Internal Improvement Trust Fund ("Internal Improvement

---

[1] Pursuant to Article IV, Section 3, Clause 1 of the United States Constitution, all states must be admitted to the Union on equal terms as those of the original thirteen States.  This is an  element of what is commonly referred to as the "Equal Footing Doctrine." Upon their admission to the Union, the original thirteen States were granted all right, title, and interest to the submerged lands beneath navigable waters within their boundaries.   Thus, when other states were subsequently admitted to the Union, they also received all right, title and interest to the submerged lands beneath navigable water within their respective boundaries.

2

Fund"). The Internal Improvement Fund holds title to and administers all State owned lands, except those used for roads, canals, and limited special districts. As such, the Internal Improvement Fund became the sole titleholder to all Florida's coastal submerged lands, including the area where Wisteria Island is now located.

6. From 1941 to 1946, to deepen the Key West Channel (the "Channel"), the United States dredged the Channel and deposited/abandoned previously submerged lands onto five separate areas around Key West: (i) the Trumbo Point area of Fort Taylor adjacent to Key West; (ii) a marine area commonly known today as the Salt Pond Keys; (iii) a marine area located West of Key West – which later became Flemming Key; (iv) two spoil areas located North of Flemming Key, commonly known today the as the Demolition Islands; and (v) a spoil area located northwest of Key West, which is now known as Wisteria Key.

7. In 1946, the United States recognized the State's right, title and interest to the five spoil areas by obtaining title, through the granting of a deed by the Internal Improvement Fund, to four of the spoil areas: (i) Trumbo Point, (ii) the Salt Pond, (iii) Flemming Key, and (iv) the Demolition Islands. [Ex. C]. These deeds reserved to the State, through the Internal Improvement Fund, three-quarters of all the phosphate minerals, and one-half of all the petroleum minerals located at the four spoil area sites purchased by the United States. *Id.* at 2.

8. After the Internal Improvement Fund deeded the four spoil area sites to the United States, the United States' official maps thereafter designated the four spoil areas as "US Naval Res." [Ex. D].[2]

9. The Internal Improvement Fund <u>never</u> transferred the right, title, or interest to the Wisteria Island spoil area to the United States.

---

[2] [Ex. D]  was provided to FEB directly from the BLM.

10.     Upon information and belief, to this day, Wisteria Island has never been designated on an official map of the United States, or any agency, branch or department thereof, as "US Naval Res."

*The Internal Improvement Fund's Sale of The Thirty-Nine Submerged Acres,*
*Including Wisteria Island*

11.     On August 3, 10, 17, 24, and 31, 1951, the Internal Improvement Fund announced in the *Key West Citizen* its intention to sell thirty-nine acres of submerged lands, through a competitive bidding process.  [Ex. E].  The submerged lands offered for sale included the above referenced fifth spoil area, now known as Wisteria Island.

12.     On September 4, 1951, the Internal Improvement Fund accepted Paul E. Sawyer's competitive bid of $71.00 per acre for the thirty-nine submerged acres.  [Ex. F].

13.     In 1952, the Internal Improvement Fund granted a deed to Paul E. Sawyer for the same  thirty-nine acres of submerged lands beneath the navigable waters of Florida, including Wisteria Island, described in the deed as:

> A parcel of Bay Bottom Land and Spoil Area Northwest of the Island of Key West, Florida, and more particularly described as follows:
>
> Commencing at the Northwesterly end of Simonton Street at the intersection of the Southwesterly right-of-way line of Simonton Street and the waters of the Bay of Florida, run North 60° West for a distance of 2150 feet, more or less, to the point of beginning of the property hereafter described.  From said point of beginning continue North 60° West for a distance of 1000 feet, thence run North 30 ° East for a distance of 1700 feet, thence run South 60° East for a distance of 1000 feet, thence run South 30° West for a distance of 1700 feet back to the point of beginning.

[Ex. G]

14.     The above-described lands encompass Wisteria Island (described in the above-land description as the "Spoil Area") and the remainder of the deed covers submerged lands in

and around Wisteria Island (the entire thirty-nine submerged acres which are the subject of the 1952 deed being sometimes referred to hereafter as the "Submerged Lands").  The 1952 deed from the Internal Improvement Fund granting the Submerged Lands to Paul E. Sawyer mirrors the form of deed used by the Internal Improvement Fund to grant the four other spoil areas to the United States in 1946.

15.     In 1953, the State's right, title, and interest to and in submerged lands within its boundaries, as articulated in Florida's 1868 Constitution, were recognized, confirmed, and established by the United States Congress and President Eisenhower through the enactment the Submerged Lands Act, 67 Stat. 29, 43 U.S.C. § 1301 *et seq*.

*FEB's Acquisition of the Submerged Lands and Wisteria Island, and*
*The Governments' Unequivocal Recognition of Such Title*

16.     On January 26, 1967, FEB acquired title to Wisteria Island, for valuable consideration, by Warranty Deed. [Ex. H]  Since 1952, when FEB's predecessor-in-interest first acquired fee title to Wisteria Island, no claim of adverse interest has ever clouded FEB's right, title and interest – nor that of FEB's predecessors-in-interest – until late 2011.

17.     FEB's present interest in the Submerged Lands follows an unbroken chain of title from the January 9, 1952 deed.  Title to the Submerged Lands was transferred to FEB through: (i) a January 28, 1952, deed from Paul E. Sawyer and Rita F. Sawyer to Bernie C. Papy, [Ex. I]; (ii) a March 28, 1958, deed from Bernie C. Papy and Pauline B. Papy to Amaryk Aldo, [Ex. J]; (iii) an April 2, 1962, deed from Amaryk Aldo and Charlotte Aldo to Wisteria Island, Inc., [Ex. K]; and (iv) a January 26, 1967, deed from Wisteria Island, Inc. to FEB, [Ex. H].

18.     FEB's right, title and interest in the Submerged Lands have been repeatedly acknowledged by the actions and statements of pertinent State, local and federal authorities. For

GREENBERG TRAURIG, P.A.

fifty-nine years, FEB and its predecessors-in-interest have enjoyed unfettered use and control of the Submerged Lands, as well as have openly exercised all rights of ownership thereof.

19.     For example, since obtaining title in 1967, FEB has: (i) paid all real estate taxes and assessments levied on Wisteria Island by Monroe County, Florida; (ii) filed Federal and State income tax returns disclosing its ownership of Wisteria Island; (iii) complied with all State and Federal laws and rules relating to ownership of Wisteria Island; (iv) worked with State and Federal governmental agencies in connection with efforts to develop Wisteria Island; and (v) been the sole party maintaining and preserving Wisteria Island – including the installation of and maintenance of "no trespassing" signs on Wisteria Island.

20.     In both 2005 and 2006, the United States' Navy ("Navy") SEAL Delivery Vehicle Team TWO (the "SEAL Team") acknowledged FEB's right and title to the Submerged Lands by entering into two separate License Agreements For The Use Of The Property (the "License Agreements"). [Ex. L].  In the Preamble of the License Agreements, the United States expressly states that FEB is the legal owner of Wisteria Island, and will, therefore, act as the LICENSOR. In further acknowledgment of FEB's right and title to the Submerged Lands, the SEAL Team agreed to permit FEB to seek damages against the United States for any damage resulting from the SEAL Team's use of the property.  *Id.*

21.     In further affirmation of FEB's right, title and interest to Wisteria Island, in 2011, the Florida Fish and Wildlife Commission arrested, and the State Attorney charged, in a highly publicized case, two persons found illegally trespassing on FEB's private property, such property being Wisteria Island.  Neither the United States nor any agency thereof intervened in the criminal proceedings or made any adverse claim of interest against the Wisteria Island's private property status.

GREENBERG TRAURIG, P.A.

*United States' Claim of an Adverse Interest*

22.     On August 3, 2011, the United States' Naval Air Station Key West, Public Affairs

Office, issued a News Release that concluded the Navy did not have a claim to the Submerged

Lands, and asserted that any claim the United States may have once had to the Submerged Lands

would have "reverted back to the [BLM]" when the United States revoked Executive Order No.

4060.  [Ex. M].[3]

23.     In response to questions posed by the *Key West Citizen*, a public affairs officer for

the BLM on August 24, 2011, sent an email to the *Key West Citizen* stating:

> Because the creation of Wisteria Island was not a natural occurrence, the island
> was *never* considered to be a part of the *public domain* of the United States . . .
> The State of Florida claimed sovereign rights to Wisteria Island under the
> authority of the Submerged Land Act of May 23, 1953.

(Emphasis added).  [Ex. N].

24.     On August 26, 2011, the United States' Fish and Wildlife Service, supported the

BLM's denial of an interest in the Submerged Lands stating:

> Wisteria Island was not a natural occurrence [and Wisteria] island was never
> considered to be a part of the *public domain* of the United States. . . . Wisteria
> Island is outside of [the Florida Keys National Wildlife Refuge] boundaries and
> falls under the jurisdiction of the State of Florida.

(Emphasis supplied).  [Ex. O].

25.     Approximately two months later, on November 7, 2011, after holding a private

meeting with Ms. Naja Girard – the Vice President of Last Stand – the BLM's Eastern States

---

[3] Executive Order  No. 4060 is discussed in paragraph 43 below.

Office, in a sudden and unexplained departure from its August 24, 2011 position, issued a private communication to Ms. Girard stating that Wisteria Island was *public land*.[4]

26.     In its private communication to Ms. Girard, the BLM stated that because Wisteria Island was built by the Navy, it was *public lands* of the United States pursuant to an Executive Order – presumably revoked Executive Order No. 4060 – and that such a result was obtained because Executive Order No. 4060 was in effect prior to Florida's admission to the United States in 1845.  [Ex. P].  In fact, Executive Order No. 4060 was not issued until seventy-nine years after Florida's initial admission to the Union, and 56 years after Florida's readmission as a state in 1868.

27.     At no time prior to issuing its private communication to Ms. Girard did the BLM contact FEB regarding its right, title, and interest in the Submerged Lands, and Wisteria Island specifically.

28.     On November 19, 2011, a BLM public affairs officer further asserted the United States adverse claim of interest to FEB's private property by issuing a press release to the *Key West Citizen*.  [Ex. Q].

29.     On August 21, 2012, almost a year after the BLM's private communication to Ms. Girard, the BLM issued a communication to FEB's legal counsel regarding the BLM's purported interest in Wisteria Island.  [Ex. R].

## II.  HISTORY OF THE SUBMERGED LANDS AND DEREIGNMENT OF TITLE TO WISTERIA ISLAND

30.     On February 22, 1819, the United States and Spain executed a treaty by which Spain ceded to the United States, "in full property and sovereignty . . . East and West Florida

---

[4] "Public lands" as used herein, refers to lands owned by the United States, and <u>not</u> the State or any other governmental authority.

[and the] adjacent Islands dependent on said Provinces." The treaty was ratified by Spain on October 24, 1820 and carried into force by the United States on March 3, 1821. [Ex. S at Art. II]. Spain, therefore, conveyed submerged lands beneath navigable waters within East and West Florida to the United States.

31.     On March 30, 1822, the United States' Congress formally established the territory and territorial government of Florida within the land ceded by Spain in 1819, including all submerged lands beneath navigable waters.   [Ex. T].

32.     On June 17, 1844, the United States appropriated $50,000.00 for naval fortification of the Florida reef, including Key West and the Dry Tortugas. [Ex. U at Sec. 6].

33.     On March 3, 1845, Florida became the twenty-seventh state of the United States, and was admitted to the Union "on equal footing with the original States." [Ex. B].  The newly created State embraced "the territories of East and West Florida" that had been ceded to the United States by Spain.  *Id.*  Therefore, on March 3, 1845, the United States conveyed to Florida – consistent with the Equal Footing Doctrine – all right, title, and interest to the submerged lands within Florida's boundaries, and specific township sections for the placement of schools and other governmental facilities.   The United States retained the remainder of all previously undisposed lands and *public lands*.

34.     On July 8, 1845, the Florida Legislature assented to the United States' purchase of "a tract of land consisting of several parcels, situated *on the Island of Key West*" for the erection and construction of certain "fortifications and improvements . . . so long as [the United States deems] it proper to *hold and occupy* the same for the purposes aforesaid."  (Emphasis supplied). [Ex. V].

35.     On July 17, 1845, the Florida Legislature again granted its consent to the United States' purchase of "lands within the limits of this State" for the erection and maintenance of "forts, magazines, arsenals, dockyards, and other needful buildings . . . and *none other*." (Emphasis supplied).  *Id.* at 3.  The Florida Legislature did not grant such consent in perpetuity; instead permitting the United States to "hold, use, occupy, own, possess, and exercise said jurisdiction over the same for the purposes aforesaid, and *none other whatsoever*."  (Emphasis supplied).  *Id*. at 4.  The Florida Legislature, thus, assented to and approved the sale of certain tracts of land within Florida – contingent upon the United States' continued use of such lands – for fortification and military purposes.

36.     Upon information and belief, the State <u>never</u> granted or conveyed the Submerged Lands to the United States, nor did the United States ever condemn or compensate the State for the Submerged Lands.

37.     On September 12, 1845, the Commissioner of the General Land Office, James Shields, sent a communication to  President James K. Polk, stating:

> The War Department has requested that *all Islands, Keys, and Banks, comprising the group called the Dry Tortugas*, with all other *Islands or Keys* on the Florida coast embraced within the redline on the enclosed diagram, may be reserved from sale or entry of any kind . . . I have therefore the honor to request . . . the reservation of all those *Islands or Keys* which are now the *property of the United States*.

(Emphasis added).  [Ex. W at 2 and 3].

38.     The requested reservation contained in the September 12, 1845 letter, by its terms, did <u>not</u> include the Submerged Lands or Wisteria Island for two reasons; (i) the first portion of the communication only refers to lands within the group called the Dry Tortugas, of which the

Submerged Lands and Wisteria Island are not a part,[5] *Id.* at 2; and (ii) the second part of the communication only requests a reservation of *islands and keys,* which were *public lands* of the United States.  The September 12, 1845, communication, therefore, does not seek to reserve any portion of the Submerged Lands or Wisteria Island, because neither are within the Dry Tortugas, and neither was/is *public lands* of the United States.   Rather, as of March 3, 1845, the Submerged Lands, including Wisteria Island, had been conveyed to Florida upon the State's admission to the Union.

39.     On September 17, 1845, President Polk accepted Commissioner Shields' recommendations and set aside and reserved the lands described above pursuant to an Executive Order dated September 17, 1845.  Consistent with Commissioner Shields' recommendation, President Polk's September 17, 1845 Executive Order did not apply to or otherwise impact Florida's existing ownership of the Submerged Lands or Wisteria Island.  *Id.* at 1 and 4.  The Submerged Lands and Wisteria Island could not have been reserved from sale by the September 17, 1845 Executive Order because they were not within the Dry Tortugas, and after March 3, 1845, the Submerged Lands and Wisteria Island were no longer *public lands* of the United States.

40.     After the conclusion of the Civil War, and in conformance with the March 2, 1867 Reconstruction Act, 14 Stat. 428, Florida was readmitted to the Union on June 25, 1868, again, on equal footing with the original thirteen States.  [Ex. X].  Florida's 1868 Constitution, as examined, reviewed, and approved by the United States' Congress in 1868, established Florida's boundaries to include submerged lands beneath navigable waters extending as far south and west

---

[5] The Dry Tortugas are located approximately seventy miles from the Island of Key West and Wisteria Island.  Upon information and belief, the geographical area around Key West has never been considered part of the Dry Tortugas.

as the Dry Tortugas, including the Florida Reefs, and all submerged lands extending from the Florida coastline for three marine leagues – approximately 10 and one-half land miles – into the Gulf of Mexico. The Submerged Lands and Wisteria Island are within Florida's 1868 boundaries, and were reconfirmed in State ownership when Florida once again entered the Union, pursuant to the Equal Footing Doctrine.

41.    On April 24, 1878, the Secretary of the War Department relinquished the reservation of the *public lands* initially reserved from sale by President Polk on September 17, 1845, except the land reserved on the Island of Key West, and the islands, keys, and banks encompassed by the Dry Tortugas.  Thus, in 1878, the United States relinquished the reservation of its own *public lands* outside the Dry Tortugas and the Island of Key West.[6]

42.    In 1908, President Theodore Roosevelt issued three Executive Orders, none of which impacted the Submerged Lands or Wisteria Island.  These Executive Orders include: (i) Executive Order No. 779 (April 6, 1908) establishing the Tortugas Keys Preserve and Breeding Ground for Native Birds, of which the Submerged Lands and Wisteria Island are not a part, [Ex. Y]; (ii) Executive Order No. 808 (June 8, 1908) reserving the islands known as Man Key and Woman Key for use by the Department of the Navy (hereafter, the "Navy") – the Submerged Lands and Wisteria Island are not located near Man and Woman Keys, [Ex. Z].; and (iii) Executive Order No. 923 (August 8, 1908) which reserved "all the keys and islands of the Florida Keys group [as depicted on the attached diagram]" for use as a preserve and breeding ground for native birds – the Submerged Lands are also not included in this reservation. [Ex.

---

[6] Even if the Executive Order of September 17, 1845, could theoretically have "reserved" lands owned by Florida, the War Department Secretary's relinquishment of such reservations would also have applied to those same lands.  Thus, after April 24, 1878, no reservations with respect to any classification of lands remained which could have impacted the Submerged Lands and Wisteria Island.

GREENBERG TRAURIG, P.A.

AA].  As can be seen on [Ex. Y-AA], none of these Executive Orders, especially Executive Order No. 923, impacted the area where the Submerged Lands and Wisteria Island are located.

43.    On August 11, 1924, President Calvin Coolidge, issued Executive Order No. 4060,  which reserved, "*subject to all existing vested rights in and to the same*" all the "islands, keys, harbors, and shoals adjacent to and in the vicinity of the Island of Key West" for use of the Navy.  (Emphasis supplied).  [Ex. BB]

44.    Although the Submerged Lands and Wisteria Island are included in the area reserved by Executive Order No. 4060, pursuant to the Equal Footing Doctrine, President Coolidge was without authority to reserve any of Florida's submerged lands beneath navigable waters without agreement and/or the remittance of compensation to Florida, which never occurred.   Executive Order No. 4060, therefore, only reserved *public lands* within the geographical area encompassed by the Order, and not those lands "subject to vested rights," including Florida's submerged lands.   In addition, President Coolidge's reservation was contingent on the Navy's continued "use" of the reserved *public lands*.

45.    On August 14, 1942, the United States Secretary of the Interior issued Public Land Order No. 30 ("PLO 30"), which withdrew and reserved certain "*public lands . . . subject to valid existing rights*," for use by the Navy in the vicinity of Key West.  (Emphasis added). [Ex. CC].  PLO 30 did not reserve the area near the Submerged Lands and Wisteria Island.

46.    As alleged above in Paragraph 7, *supra*, during the early 1940s the United States dredged the Channel and deposited/abandoned previously submerged lands/soil in five separate locations.  Four of those locations were later purchased by the United States from the Internal Improvement Fund in 1946.  [Ex. C].

47.     In 1952, the Internal Improvement Fund granted the fifth dredged soil dumping location, such being Wisteria Island, to Paul E. Sawyer. [Ex. G].

48.     In reaction to the State's request for bids for the Submerged Lands, including Wisteria Island, on September 27, 1951, the Navy sent a letter to the Internal Improvement Fund claiming an adverse interest to Florida's ownership of the Submerged Lands.   [Ex. DD]. Specifically, the Navy purported to have an interest in the Submerged Lands and Wisteria Island – which the Navy incorrectly stated was part of Frankford Bank – via the September 17, 1845 Executive Order.  As discussed in greater detail above in Paragraph 39, *supra*, the September 17, 1845 Executive Order could not have granted the United States an interest in the Submerged Lands, including Wisteria Island.

49.     In response to the Navy's communication, Florida Attorney General Richard W. Ervin, sent a communication to the Internal Improvement Fund's land agent indicating that he was inclined to allow the sale of the Submerged Lands, including Wisteria Island, to Paul E. Sawyer to proceed, because, in Attorney General Ervin's opinion, the Navy's claim to title was "debatable . . . and so shrouded in antiquity" that he was unable to ascertain the validity of the Navy's claim.  [Ex. EE]

50.     In 1953, Congress enacted the Submerged Lands Act (the "SLA"), 67 Stat. 29, 43 US.C. § 1301 *et seq*., which states in pertinent part:

> It is determined and declared to be in the public interest that (1) title to and ownership of the lands beneath navigable waters within the boundaries of the respective States [are] *recognized, confirmed, established, and vested in and assigned to the respective States*    . . . and *[their] respective grantees, lessees, or successors in interest*.

* * * * *

14

The United States *releases and relinquishes* unto said States [and their respective grantees lessees, or successors in interest] . . . *all right, title and interest* of the United States . . . to all said title, improvements, and natural resources.

(Emphasis supplied).  43 U.S.C. § 1311(a) and (b).

51.      The SLA defined "boundaries" and "lands beneath navigable waters" as those extending from the coastline for three marine leagues into the Gulf of Mexico when approved by Congress.  43 U.S.C. § 1301(a)-(b).  The SLA, consistent with Florida's 1868 federally approved Constitution, therefore preserved and codified Florida's ownership of all the submerged lands beneath navigable waters within the State's boundaries for three marine leagues into the Gulf of Mexico.  The SLA further defined all "lands beneath navigable waters" as "all filled in, made, or reclaimed lands."  43 U.S.C. § 1301(a)(3).

52.      The SLA also included several exceptions wherein title to submerged lands would not be recognized and confirmed to states and their respective grantees, including "all lands filled in, built up, or otherwise reclaimed by the United States *for its own use*; and any rights the United States has in lands *presently and actually* occupied by the United States."  43 U.S.C. § 1313(a).  In 1953, the United States was not using the Submerged Lands or Wisteria Island, nor was the United States occupying the Submerged Lands or Wisteria Island, because Paul E. Sawyer had been granted title to the Submerged Lands and Wisteria Island the previous year.

53.      The SLA, therefore, embodied the United States' abandonment and express withdrawal of any claims of an adverse interest, right or title to the lands beneath Florida's navigable waters, or previously dredged submerged lands, including the Submerged Lands and Wisteria Island.

GREENBERG TRAURIG, P.A.

54.     FEB's present interest in the Submerged Lands and Wisteria Island follow an unbroken chain of title from the January 9, 1952 deed between the Internal Improvement Fund and Paul E. Sawyer. *See* Paragraph 17, *supra.*

55.     On March 18, 1982, the BLM issued Public Land Order No. 6214 ("PLO 6214") which expressly revoked Executive Orders No. 808 (June, 8, 1908), and No. 4060 (August 11, 1924), and PLO 30 (August 14, 1942).   In addition, PLO 6214 expressly reserved only all remaining "*public lands*" encompassed by Executive Order No. 923 (August 8, 1908).   As set forth in Paragraph 42, and as reflected on Ex. AA, Executive Order 923 did not include the Submerged Lands or Wisteria Island.   Similarly, PLO 6214 did not make a specific claim – adverse or otherwise – to the Submerged Lands or Wisteria Island because neither were "*public lands*" in 1982, nor were they encompassed by the area reserved in Executive Order 923.   PLO 6214 merely informed the public of the United States' intention to retain all the *public lands* – whatever they may be – in the area encompassed by Executive Order 923.

56.     Thereafter, as set forth in Paragraph 20, *supra*, the United States acknowledged its lack of ownership and interest in the Submerged Lands and Wisteria Island in 2005 and 2006 when the SEAL Team entered into the License Agreements.

57.     Five years later, however, the Navy asserted that any claim the United States once had in the Submerged Lands and Wisteria Island must now reside in the BLM, if any such claim still existed.

58.     On August 24 and 26, 2011 the United States again evidenced that, to the extent the United States ever had a claim to Wisteria Island, the United States had abandoned and withdrawn any such claim through the enactment of the Submerged Lands Act in 1953.

GREENBERG TRAURIG, P.A.

59.     Even after BLM asserted a claim by its November 7, 2011 letter, the United States Fish and Wildlife Service disagreed and denied that the BLM or the United States had any interest in the Submerged Lands, including Wisteria Island.  [Ex. O].

60.     On August 21, 2012, the BLM formally made FEB, through its legal counsel, aware of the United States' claim of adverse interest to FEB's sole right, title and interest in the Submerged Lands and Wisteria Island.

### III. THE UNITED STATES PURPORTED INTEREST IN THE SUBMERGED LANDS AND WISTERIA ISLAND

61.     The BLM's November 7, 2011, private communication to Ms. Girard asserts that the United States' adverse claim of interest to the Submerged Lands, including Wisteria Island, originates from Executive Order No. 4060 (August 11, 1924).  *See* Paragraph 26, *supra.*

62.     The BLM is incorrect in its assertion that Executive Order No. 4060 was in effect and operative prior to Florida becoming a state, – and garnering title to submerged lands beneath navigable waters – in 1845 and again in 1868.

63.     In addition, prior to the United States express abandonment and withdrawal of an interest in Florida's submerged lands though the SLA in 1953, the Navy also asserted an adverse claim of interest in Florida's submerged lands in 1951.  [Ex. DD].  The Navy's assertion of an adverse interest in 1951 was based on the reservation requested in Commissioner Shields' September 12, 1845, communication to President Polk.

64.     As described in Paragraph 39, *supra*, President Polk's September 17, 1845 Executive Order did not apply to the Submerged Lands because the Submerged Lands: (i) are neither within nor near the Dry Tortugas; and (ii) were not *public lands* of the United States at the time of the reservation; and (iii) were not islands or keys along the Florida coastline in 1845.

GREENBERG TRAURIG, P.A.

In addition, on April 4, 1878, the Secretary of War relinquished the vast majority of the areas and lands reserved by President Polk's Executive Order. *See* Paragraph 41, *supra*.

65.     The BLM's August 21, 2012, communication to FEB is the BLM's fullest articulation of its purported adverse claim of interest to the Submerged Lands and Wisteria Island to date.   Although the communication is disjointed and confusing, it appears to suggest that the BLM's adverse claim of interest is based upon: (i) the September 17, 1845 Executive Order; (ii) an undated handwritten note on an undated public land survey which also lists the wrong township; (iii) a 1908 correspondence from one federal agency to another; (iv) Executive Order No. 4060; (v) a mistaken belief that the Submerged Lands and Wisteria Island are part of Frankford Bank; (vi) a 1927 sketch of Frankford Bank – again, the Submerged Lands and Wisteria are <u>not</u> part of Frankford Bank; (vii) a 1928 lease for shark skinning on Frankford Bank; and (viii) one of the exceptions to the SLA discussed in Paragraph 52, *supra*.

## IV. THE CASE OR CONTROVERSY, ADVERSE CLAIM OF INTEREST OF THE UNITED STATES AND CAUSE OF ACTION

66.     Plaintiff incorporates herein Paragraphs 1 through 65.

67.     FEB, as the successor-in-interest to Florida, possesses all right, title and interest in the Submerged Lands, including Wisteria Island, the same being more particularly described in Paragraph 13, *supra*.

68.     Florida, upon its admission to the United States in 1845, was granted all right, title and interest to all submerged lands beneath navigable waters within its boundaries as defined by Florida's 1868 – federally reviewed and approved – Constitution.   Upon Florida's readmission to the Union, Florida was granted title to all submerged lands extending from the Florida coastline for three marine leagues into the Gulf of Mexico, which includes the

GREENBERG TRAURIG, P.A.

Submerged Lands and Wisteria Island.  Any asserted adverse interest of the United States to the Submerged Lands is, therefore, invalid under the Equal Footing Doctrine.

69.    The United States has improperly asserted an adverse claim of interest in the Submerged Lands as against the interest of FEB.  The claim of ownership by the United States lacks substance, has clouded FEB's title, and created a case and controversy regarding FEB's ownership, use, maintenance and development of the Submerged Lands and Wisteria Island.

70.    Executive Order No. 4060 was <u>not</u> effective or operative prior to Florida becoming a State, nor did Executive Order No. 4060 reserve from sale or entry any of Florida's submerged lands, but rather *public lands* of the United States, as is evidenced by the United States acquisition of four of the dredged lands/soil dumping sites from the Internal Improvement Fund in 1946.   *See* Paragraphs 7, 43, 44*, supra.*

71.    The United States expressly abandoned and withdrew any interest it may have had to Florida's submerged lands through the SLA in 1953, while also confirming the validity of title granted by Florida to private individuals.

72.    The SLA recognized, confirmed and affirmed the right, title and interest of states to "all filled in, made, or reclaimed lands."  43 U.S.C. § 1301(a)(3).  The SLA only exempted "all lands filled in, built up, or otherwise reclaimed by the United States *for its own use.*" (Emphasis supplied).  43 U.S.C. § 1313 (a).  In 1953, the bona fide titleholder of the Submerged Lands and Wisteria Island was the only entity using the Submerged Lands and Wisteria Island. The Submerged Lands and Wisteria Island, therefore, were not exempted from the SLA, withheld from Florida's ownership or retained by the United States.

73.    Any asserted notice of an adverse interest claimed by the United States to FEB's predecessors-in-title, including the State, was ineffective as a result of: (i) the United States, by

way of the SLA, withdrawing and abandoning its asserted interests to the Submerged Lands, including Wisteria Island; (ii) multiple statements and publications of officers and agencies of the United States notifying FEB that the United States had no interest in the Submerged Lands, including Wisteria Island; and (iii) the recent apparent attempt by the United States, after sixty years, to extend the reach and breadth of the Navy's 1951 notice of its adverse claim to lands not addressed in such notice.

74.     Pursuant to the QTA, Plaintiff seeks to confirm its ownership of the Submerged Lands, including Wisteria Island, to ensure that the United States and its agencies comply with their obligations to recognize FEB's title to such property.

75.     FEB is entitled to an order of this Court quieting title to FEB in and to the Submerged Lands, including Wisteria Island, as such are particularly described in Paragraph 13, *supra*.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests relief against the United States as follows:

1.     An order quieting title to FEB in the Submerged Lands which are the subject of this litigation and granting of the relief requested in the foregoing cause of action;

2.     An order confirming the validity of FEB's ownership of the Submerged Lands, including Wisteria Island, as such lands are described in Paragraph 13, *supra*;

3.     An order awarding costs, fees and attorneys' fees to the extent permitted by law; and

GREENBERG TRAURIG, P.A.

      4.      An order granting such other and further relief as may be just and appropriate upon the facts and law at issue herein.

Dated:  August 24, 2012

S/ BARRY RICHARD

**BARRY RICHARD**
Florida Bar Number 0105599
**GREENBERG TRAURIG, P.A.**
101 East College Avenue
Tallahassee, FL  32301
Telephone (850) 222-6891
Facsimile (850) 681-0207
*p: richardb@gtlaw.com*
*s: abbuhlc@gtlaw.com*
*s: tassinarip@gtlaw.com*

*TAL 451,708,407v1 8-24-12*